UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

V-SOFT CONSULTING GROUP, INC.,                                                    Plaintiff,

v.                                                           Civil Action No. 3:16-cv-425-DJH

LOGIC CORPORATION,                                                              Defendant.

\* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

Plaintiff V-Soft Consulting and Defendant Logic Corporation entered into a consulting agreement.  (Docket No. 4-1, PageID # 38)  When a dispute arose over the agreement, V-Soft filed suit against Logic in Jefferson County, Kentucky Circuit Court.  (D.N. 1)  After Logic removed the case to this Court, Logic filed a motion to dismiss, asserting that it is not subject to personal jurisdiction in Kentucky.  (D.N. 4-1, PageID # 38–41)  Because the Court finds that Logic's conduct does not fall under Kentucky's long-arm statute, the Court will grant the motion to dismiss.

## I.      BACKGROUND

V-Soft Consulting "provides professional IT consulting services to third parties by the temporary assignment of its employees to various client locations all across the United States." (D.N. 5-1, PageID # 54)  V-Soft is a Texas corporation that is headquartered in Louisville, Kentucky.  (*Id*.; D.N. 4-1, PageID # 40)  Defendant Logic is a "global information technology recruiting . . . and consulting firm."  Logic is a Florida corporation with its principal place of business in Florida.  (D.N. 4-1, PageID # 37)

On October 13, 2015, V-Soft and Logic entered into a consulting agreement that called for V-Soft to provide on-site consulting services to Logic's client, Bloomberg LP, in New York.

1

(*Id.*, PageID # 38)  V-Soft filed suit in Jefferson County, Kentucky Circuit Court, alleging that Logic breached the contract by failing to pay V-Soft for these services, misrepresented its relationship with Bloomberg, was unjustly enriched from its failure to pay, and committed theft in violation of Ky. Rev. Stat. § 514.070.  (D.N. 1-2, PageID # 9–12; D.N. 5-1, PageID # 54) Logic removed the case to this Court and filed a motion to dismiss, arguing that it is not subject to personal jurisdiction in Kentucky.  (D.N. 4-1, PageID # 38–41)  Logic claims that it is not subject to Kentucky's long-arm statute because it does not transact business in Kentucky.  (*Id.*, PageID # 39–40)  In support, Logic states that it is not registered with the Kentucky Secretary of State; it does not have a physical presence in Kentucky; no Logic representative traveled to Kentucky to negotiate the agreement; and the agreement was not performed in Kentucky.  (*Id.*) According to Logic, its only connection to Kentucky is its consulting agreement with V-Soft. (*Id.*)

In response, V-Soft argues that because it executed a contract with a party located in Louisville, Kentucky, Logic transacted business in the Commonwealth under Kentucky's long-arm statute.  (D.N. 5-1, PageID # 56)  V-Soft then asserts that Logic has sufficient minimum contacts with Kentucky for the following reasons: (1) the agreement referenced V-Soft's location in Kentucky; (2) the employee assigned to Bloomberg was in the United States on a visa and the employee's immigration issues were handled in Louisville; (3) Logic had "significant oral and written communications" with V-Soft employees in Louisville; and (4) the payments were to go to V-Soft's headquarters in Louisville.  (*Id.*, PageID # 54–55)  Alternatively, V-Soft claims that Logic's alleged failure to pay constitutes theft, which would be considered a "criminal act occurring within the Commonwealth of Kentucky."  (*Id.*, PageID # 58)  According to V-Soft,

"[t]hose criminal actions alone should satisfy the minimal contacts requirement of the 14th amendment." (*Id.*, PageID # 58–59)

Logic also asserts that the action should be dismissed because of the forum-selection clause contained in the parties' consulting agreement. (D.N. 4-1, PageID # 41–42) The agreement states:

> This Agreement shall be governed by the laws of the state of Florida without regard to choice of law principals, regardless of where Contractor's work is performed. Company and Contractor hereby irrevocably submit to the jurisdiction of any court (state or federal) located within the state of Florida in any action, suit, or proceeding brought against or relating to or in connection with this Agreement or any transaction contemplated thereby, and to the extent permitted by applicable law, each party hereby waives and agrees not to assert by way of motion, as a defense or otherwise, in any such suit, action or proceeding, any claim that either he is not personally subject to the jurisdiction of such courts, that the suit, action, or proceeding is brought in an inconvenient forum, that the venue of the suit, action, or proceeding is improper, or that this Agreement or any instrument, agreement or document referred to herein or the subject matter hereof may not be litigated in or by such courts.

(*Id.*, PageID # 41; D.N. 1-2, PageID # 23) Logic claims that this forum-selection clause is valid and should be enforced. (D.N. 4-1, PageID # 41–42)

V-Soft responds that the forum-selection clause does not mandate dismissal of the complaint. (D.N. 5-1, PageID # 59–60) According to V-Soft, the clause indicates that V-Soft will submit to personal jurisdiction in Florida but does not establish Florida as the exclusive jurisdiction for bringing suit. (*Id.*) Alternatively, V-Soft argues that the agreement was terminated when Logic breached it by failing to pay V-Soft and thus is no longer valid. (*Id.*) Next, V-Soft claims that the agreement was procured by fraud and misrepresentation because Logic misrepresented its relationship with Bloomberg. (*Id.*) Finally, V-Soft asserts that it has claims that are independent of the agreement and that those claims "may be pursued in any appropriate forum." (*Id.*)

3

## II.     DISCUSSION

### A.  Forum-Selection Clause

V-Soft first argues that the clause at issue does not establish Florida as the exclusive jurisdiction for suits arising from the parties' agreement.  (*Id*.)  The Court agrees.

Interpretation of a forum-selection clause is governed by federal common law.  *See Wong v. PartyGaming Ltd*., 589 F.3d 821, 827–28 (6th Cir. 2009).  "Under federal common law, forum selection clauses are to be interpreted by reference to ordinary contract principles" and "should be upheld absent a strong showing that [they] should be set aside."  *Crown Labs., Inc. v. Se. Commercial Fin., LLC*, No. 2:11-CV-185, 2012 WL 2126945, at *2 (E.D. Tenn. Apr. 30, 2012) (citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595 (1991); *In re Delta Am. Re Ins. Co.*, 900 F.2d 890, 892 (6th Cir. 1990)).

"A forum selection clause may be either 'mandatory' or 'permissive' in nature."  *Id*. (quoting *Cornett v. Carrithers*, 465 F. App'x 841, 843 (11th Cir. 2012)).  "A mandatory clause prescribes a specific forum in which litigation regarding the contracted-to subject matter must be brought; a permissive clause, by contrast, identifies a forum in which such litigation permissibly may be brought, but on a non-exclusive basis."  *Cornett*, 465 F. App'x at 843; *see also Gen. Elec. Co. v. G. Siempelkamp GmbH & Co.*, 29 F.3d 1095, 1099 (6th Cir. 1994).

The Tenth Circuit has explained that

[g]enerally speaking, the circuits that have addressed the issue are in agreement that "where venue is specified in a forum selection clause with mandatory or obligatory language, the clause will be enforced; where only jurisdiction is specified in a forum selection clause, the clause will generally not be enforced unless there is some further language indicating the parties' intent to make venue exclusive."

*K & V Sci. Co. v. Bayerische Motoren Werke Aktiengesellschaft*, 314 F.3d 494, 499 (10th Cir. 2002) (alterations omitted) (quoting *Paper Express, Ltd. v. Pfankuch Maschinen GmbH*, 972

4

F.2d 753, 757 (7th Cir. 1992)); *see also Travelers Prop. Cas. Co. of Am. v. Centimark, Corp.*, No. 2:04-CV-0916, 2005 WL 1038842, at *3 (S.D. Ohio May 3, 2005).   "An agreement conferring jurisdiction in one forum will not be interpreted as excluding jurisdiction elsewhere unless it contains specific language of exclusion . . . or it leaves it in the control of one party with power to force on its own terms the appropriate forum."   *GMAC Commercial Mortg. Corp. v. LaSalle Bank Nat'l Ass'n*, 242 F. Supp. 2d 279, 282 (S.D.N.Y. 2002) (quoting *City of New York v. Pullman*, 477 F. Supp. 438, 442 n.11 (S.D.N.Y. 1979)); *see also IntraComm, Inc. v. Bajaj*, 492 F.3d 285, 290 (4th Cir. 2007).   "The normal construction of the jurisdiction rules includes a presumption that, where jurisdiction exists, it cannot be ousted or waived absent a clear indication of such a purpose." *Id*. (quoting *Pullman*, 477 F. Supp. at 443).

For example, in *Blanco v. Banco Industrial de Venezuela*, the forum-selection clause read:

> [The parties agree] that any legal action or proceedings arising out of or in connection with this Agreement may be brought in the High Court of Justice in England, the Courts of the State of New York, the Courts of the United States of America in New York or the Courts of the City of Caracas, Venezuela, [and] irrevocably submit to the jurisdiction of each such court.

997 F.2d 974, 976 (2d Cir. 1993).  The Second Circuit distinguished between clauses that used permissive language, such as "may" and "irrevocably submit," and clauses that used obligatory language, such as "must," in addressing the forum.  *Id*. at 979.   The court explained that the former "left open the possibility that an action could be brought in any forum where jurisdiction can be obtained either inside or outside of Venezuela." *Id*. (quoting *Proyecfin de Venezuela, S.A. v. Banco Indus. de Venezuela, S.A.*, 760 F.2d 390, 396 (2d Cir. 1985)).

In this case, the forum-selection clause is permissive.  (D.N. 1-2, PageID # 23)  The clause states that the parties "irrevocably submit to the jurisdiction of any court (state or federal)

located within the state of Florida in any action, suit, or proceeding brought against or relating to or in connection with this Agreement." (*Id.*)  This clause indicates that a suit *may* be filed in Florida, but there is no language in the clause indicating that an action *must* be brought in Florida.  (*Id.*)  Because there is no obligatory language that provides that Florida is the exclusive venue for suit, the forum-selection clause will not be enforced.  *See K & V Sci. Co.*, 314 F.3d at 499.

### B.  Personal Jurisdiction

Logic also argues that it is not subject to personal jurisdiction in Kentucky because it does not transact business in the Commonwealth.  (D.N. 4-1, PageID # 38–41)

The burden is on V-Soft to demonstrate that personal jurisdiction exists.  *See Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991).  To make this showing, a plaintiff "may not stand on [its] pleadings but must, by affidavit or otherwise, set forth specific facts" demonstrating the Court's jurisdiction.  *Id.*  When presented with a motion to dismiss for lack of personal jurisdiction, the Court has three options: (1) "decide the motion upon the affidavits alone," (2) "permit discovery in aid of deciding the motion," or (3) "conduct an evidentiary hearing to resolve any apparent factual questions."  *Id.* (citing *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989)).

Neither party has requested jurisdictional discovery in this case.  Nor does the Court find that there are factual disputes necessitating an evidentiary hearing.  Consequently, V-Soft's burden is relatively light: "Where the court relies solely on the parties' affidavits to reach its decision, the plaintiff must make only a prima facie showing that personal jurisdiction exists in order to defeat dismissal."  *Id.*  The Court must view the pleadings and affidavits in the light most favorable to the plaintiff, without "weigh[ing] the controverting assertions" of the

6

defendant. *Id.* at 1459.  Dismissal is proper only "if all of the specific facts . . . alleged" by the plaintiff "collectively fail[ ] to state a prima facie case for jurisdiction."  *Id.*

### 1.  Long-Arm Statute

"Federal Rule of Civil Procedure 4(k)(1)(A) states that personal jurisdiction exists over any properly-served defendant 'who could be subjected to the jurisdiction of a court of general jurisdiction in the state in which the district court is located.'"  *Flynn v. Greg Anthony Constr. Co.*, 95 F. App'x 726, 739 (6th Cir. 2003) (quoting Fed. R. Civ. P. 4(k)(1)(A)).  In Kentucky, the Court must first look to Kentucky's long-arm statute to determine whether "the cause of action arises from conduct or activity of the defendant that fits into one of the statute's enumerated categories."  *Caesars Riverboat Casino, LLC v. Beach*, 336 S.W.3d 51, 57 (Ky. 2011).  If the statute is applicable, the Court must then apply the traditional test "to determine if exercising personal jurisdiction over the non-resident defendant offends his federal due process rights."  *Id.*

Kentucky's long-arm statute provides, in relevant part, that "[a] court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a claim arising from the person's . . . [t]ransacting any business in this Commonwealth."  Ky. Rev. Stat. § 454.210(2)(a).  *Caesars* clarified that "Kentucky's long-arm statute is narrower in scope than the federal due process clause."  *Cox v. Koninklijke Philips, N.V.*, 647 F. App'x 625, 628 (6th Cir. 2016) (citing *Caesars*, 336 S.W.3d at 55–57).  "There is little case law interpreting the meaning of 'transacting business' . . . following *Caesars*, but, 'even before *Caesar[s]* narrowed the scope of Kentucky's long arm statute, Kentucky courts . . . required a course of direct, affirmative actions within a forum that result in or solicit a business transaction.'"  *Gentry v. Mead*, No. CV 16-100-DLB-CJS, 2016 WL 6871252, at *3 (E.D. Ky. Nov. 21, 2016) (quoting *Modern Holdings, LLC v. Corning, Inc.*, No. 13-CV-405, 2015 WL 1481443, at *6 (E.D. Ky. Mar. 31,

7

2015)).  "[E]ven under the outer bounds of due process, 'the mere existence of a contract . . . is insufficient to confer personal jurisdiction.'"  *Cox*, 647 F. App'x at 628 (citation omitted) (quoting *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 722 (6th Cir. 2000)).

For example, in *Gentry*, the court held that "[e]ntering into a Note, by itself, does not establish the minimum contacts needed for jurisdiction."  2016 WL 6871252 at *3.  The court explained that the defendant "never traveled to Kentucky," the note was not executed in Kentucky, and the defendant's "only contact with Kentucky was in entering into the Note with Gentry, who resided there."  *Id*.  Therefore, the Court found that the defendant had not "transacted business" in Kentucky and his contacts were insufficient to establish personal jurisdiction.  *Id*.

Similarly, in *Envirometric Process Controls, Inc. v. Adman Electric, Inc*., the plaintiff, a Kentucky corporation, subcontracted with the defendant, a Tennessee corporation, to provide materials and services in Tennessee.  No. 3:12CV-62-S, 2012 WL 4023789, at *2 (W.D. Ky. Sept. 12, 2012).  The Court held that the defendant had not "transact[ed] business" in Kentucky because he was not licensed to do business in Kentucky; he had no physical presence in the Commonwealth; the contract was performed outside Kentucky; and the contract was negotiated over phone and email.  *Id*. at * 2–3.

In *Modern Holdings*, the court held that a defendant corporation had not "transacted business" in Kentucky because it had no offices, employees, manufacturing facilities, or agent for service of process in the Commonwealth.  2015 WL 1481443 at *7.  Additionally, the corporation was never licensed to do business in Kentucky.  *Id*.

In contrast, the court in *Caesars* found that the defendant "transacted business" in Kentucky.  336 S.W.3d at 53.  In that case, the plaintiff was injured on a casino boat owned by

an Indiana corporation and docked in Indiana.  *Id*. at 52–53.  However, because the defendant advertised heavily in Kentucky, including "mass media and billboard advertising in Kentucky, direct mail advertising to Kentucky residents, preferred customer incentives directed to Kentucky residents, and substantial civic and charitable activities in the Commonwealth," the court found that there was personal jurisdiction over the defendant in Kentucky.  *Id*. at 58.

In this case, the Court finds that the defendants have not transacted business in the Commonwealth.  *See* Ky. Rev. Stat. § 454.210(2)(a).  Similar to the defendants in *Gentry*, *Envirometric*, and *Modern Holdings*, the only contact that Logic has with Kentucky is its contract with V-Soft, a corporation headquartered in Kentucky.  *See Gentry*, 2016 WL 6871252, at *3; *Envirometric*, 2012 WL 4023789, at *2; *Modern Holdings*, 2015 WL 1481443, at *7.  As in *Envirometric* and *Modern Holdings*, Logic is not licensed to do business in Kentucky, has no physical presence in Kentucky, and performed the contracts at issue outside Kentucky.  *See Envirometric*, 2012 WL 4023789, at *2–3; *Modern Holdings*, 2015 WL 1481443, at *7.  Therefore, the Court concludes that Logic has not "transacted business" in Kentucky, and it need not consider Logic's due process rights at this juncture.  *See Caesars*, 336 S.W.3d at 57.

### 2.  Theft

Alternatively, V-Soft argues that Logic's alleged theft "satisf[ies] the minimal contacts requirement of the 14th amendment."  (D.N. 5-1, PageID # 58)  According to V-Soft, Logic committed theft pursuant to Ky. Rev. Stat. § 514.070, part of the Kentucky Penal Code, and this alleged criminal activity is a sufficient basis for personal jurisdiction in Kentucky.  (*Id*.)

Ky. Rev. Stat. § 514.070 states in relevant part:

(1) A person is guilty of theft by failure to make required disposition of property received when:

9

(a) He obtains property upon agreement or subject to a known legal obligation to make specified payment or other disposition whether from such property or its proceeds or from his own property to be reserved in equivalent amount; and

(b) He intentionally deals with the property as his own and fails to make the required payment or disposition.

Ky. Rev. Stat. § 514.070(1). "[T]he Supreme Court of Kentucky [has] held that [Ky. Rev. Stat. §] 446.070 'creates a private right of action for the violation of any statute so long as the plaintiff belongs to the class intended to be protected by the statute.'" *Mercy Health Partners-Lourdes, Inc. v. Hastings*, No. 5:05CV-109-R, 2006 WL 1867453, at *5–6 (W.D. Ky. June 29, 2006) (citing *State Farm Mut. Auto. Ins. Co. v. Reeder*, 763 S.W.2d 116, 118 (Ky. 1988)).

"[Ky. Rev. Stat.] § 446.070 is a negligence per se statute that provides a private right of action for some Kentucky criminal statutes," including Ky. Rev. Stat. § 514.070, "such that the evidence needed to convict a defendant under the criminal statute necessarily overlaps, and in some cases, largely envelops the evidence needed to prove the claim pursuant to KRS § 446.070." *Caudill Seed & Warehouse Co. Inc. v. Jarrow Formulas, Inc.*, No. 3:13-CV-82-H, 2013 WL 4048541, at *6 (W.D. Ky. Aug. 9, 2013). "To make a negligence per se claim for a violation of a statute under Section 446.070, a plaintiff must show that he is within the class of persons which the violated statute was intended to protect." *In re Marrowbone Clinic Pharmacy, Inc.*, No. 12-70065, 2014 WL 1806787, at *8 (Bankr. E.D. Ky. May 7, 2014) (citing *Davidson v. Am. Freightways, Inc.*, 25 S.W.3d 94, 99–100 (Ky. 2000)).

Therefore, the Court first looks to whether V-Soft is within the class of persons that Ky. Rev. Stat. § 514.070 was designed to protect. The Kentucky Court of Appeals has explained that Ky. Rev. Stat. § 514.070(1) "is based upon section 223.8 of the American Law Institute's Model Penal Code." *Blanton v. Commonwealth of Ky.*, 562 S.W.2d 90, 92 (Ky. Ct. App. 1978). Commentary to an earlier draft of that section of the Model Penal Code stated:

> The section applies also where statutes require certain classes of persons who receive funds to reserve such funds for particular purposes. Examples of this legislation are the building contractor statutes requiring payments received on the building contract to be used to pay laborers and materialmen, statutes requiring factors and commission merchants to remit the net proceeds of sale of agricultural products to the consignor, and statutes requiring retailers to collect sales taxes to be paid over to the state.

*Id*. (quoting ALI Model Penal Code, Tentative Draft # 2, at 81 (1954)).  The court added, "[t]he drafters of the penal code clearly intended KRS 514.070(1) to apply to contractors who failed to apply payments received from the owner to claims for labor and material furnished on the job." *Id*.

In this case, V-Soft alleges that Logic received funds from Bloomberg that were meant to be paid to V-Soft for its services.  This is analogous to the example of a building contractor who receives payments that are to be used to pay for labor and materials.  *See Blanton*, 562 S.W.2d at 92.  Therefore, the Court concludes that V-Soft is within the class of persons that Ky. Rev. Stat. § 514.070 is meant to protect.

To survive a motion to dismiss a claim under Ky. Rev. Stat. § 446.070, the plaintiff must satisfy the pleading requirements of Rule 9.  *See In re Marrowbone Clinic*, No. 2014 WL 1806787, at *8 (citing Fed. R. Civ. P. 9).  "Rule 9 requires the plaintiff to plead the who, what, when, where, and how of the fraud."  *Id*.  To prove a claim of theft under Ky. Rev. Stat. § 514.070, V-Soft must show that Logic "obtain[ed] property upon an agreement or a known legal obligation to make a specified payment or other disposition from that property; and second, [that Logic] intentionally deal[t] with the property as [its] own and fail[ed] to make the required payment or disposition."  *Id*. (citing Ky. Rev. Stat. § 514.070).

Here, V-Soft alleges that Logic owed it $83,800 under the service agreement but failed to make payments from November 1, 2015 to March 11, 2016.  (D.N. 1-2, PageID # 9–10)  V-Soft

11

further states that Logic received payments from its client, Bloomberg, but "failed to remit" these payments to V-Soft despite a "known legal obligation to use the proceeds of the payments" from Bloomberg to pay V-Soft. (*Id.*, PageID # 11–12)   The Court finds that V-Soft's allegations are sufficiently specific with respect to the "who, what, when, where, and how" of the alleged theft to satisfy Rule 9's pleading standards. *See In re Marrowbone Clinic*, No. 2014 WL 1806787, at *8 (citing Fed. R. Civ. P. 9).   Therefore, V-Soft has alleged a negligence per se claim against Logic. *See Caudill Seed*, 2013 WL 4048541, at *6.

### a.  Long-Arm Statute

As explained above, to establish personal jurisdiction in Kentucky, the Court must first determine whether the cause of action falls under the state's long-arm statute. *See Caesars*, 336 S.W.3d at 57.   Kentucky's long-arm statute provides, in relevant part:

> A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a claim arising from the person's:
>
> . . .
>
> 3.   Causing tortious injury by an act or omission in this Commonwealth;
>
> 4.   Causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this Commonwealth, provided that the tortious injury occurring in this Commonwealth arises out of the doing or soliciting of business or a persistent course of conduct or derivation of substantial revenue within the Commonwealth.

Ky. Rev. Stat. § 454.210(2)(a).   A negligence per se claim brought pursuant to Ky. Rev. Stat. § 446.070 is a tort. *See Sadler v. Advanced Bionics, Inc.*, 929 F. Supp. 2d 670, 681 (W.D. Ky. 2013).   V-Soft has not specified which provision of the Kentucky long-arm statute its theft claim falls under.   The only provisions that may apply to the alleged tortious injury appear to be

12

subparts 3 and 4. However, subpart 3 does not apply because V-Soft has not alleged that Logic performed any act or omission in Kentucky that resulted in V-Soft's injury. Rather, Logic was located in Florida and executed the agreement in New York. (D.N. 4-1, PageID # 37–38) Additionally, for the reasons discussed above, subpart 4 does not apply because V-Soft has not demonstrated that Logic regularly did business in the Commonwealth. *See* Ky. Rev. Stat. § 454.210(2)(a)(4). Therefore, V-Soft has not demonstrated that Kentucky's long-arm statute applies.

### b. Due Process

Even assuming that V-Soft could show that Logic's alleged tort satisfied Kentucky's long-arm statute, the Court concludes that exercising personal jurisdiction over Logic would offend its federal due process rights. *See Caesars*, 336 S.W.3d at 57. To satisfy a due process analysis, V-Soft must "establish with reasonable particularity sufficient 'minimum contacts' with [Kentucky] so that the exercise of jurisdiction over [Logic] would not offend 'traditional notions of fair play and substantial justice.'" *Neogen Corp. v. Neo Gen Screening, Inc.,* 282 F.3d 883, 889 (6th Cir. 2002) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Due process limits the Court's exercise of both general and specific personal jurisdiction. General jurisdiction "permits a court to assert jurisdiction over a defendant based on a forum connection unrelated to the underlying suit," whereas specific jurisdiction is based on a connection "between the forum and the underlying controversy." *Walden v. Fiore*, 134 S. Ct. 1115, 1120 n.6 (2014).

The paradigm forums for the exercise of general jurisdiction over a corporation are those places where the corporation is incorporated and where it maintains its principal place of business. *See Daimler AG v. Bauman,* 134 S. Ct. 746, 760 (2014). Logic is incorporated in Florida and has its principal place of business in Florida. (D.N. 4-1, PageID # 37) It has no

13

offices or employees in Kentucky, and V-Soft has presented no evidence demonstrating that Logic's connections with Kentucky are so "continuous and systematic" as to render it "at home" here. *See id.* at 760–61. Thus, the Court cannot exercise general jurisdiction over Logic.

For a court to exercise specific jurisdiction consistent with due process, "the defendant's suit-related conduct must create a substantial connection with the forum State." *Walden,* 134 S. Ct. at 1121–22. A plaintiff must show that the relationship between the defendant and the state arises "out of contacts that the defendant himself creates with the forum State," and the relationship must be based on the "defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id.* at 1121–23 (citation omitted).

The Sixth Circuit applies a three-part test to determine whether a court's exercise of specific jurisdiction is consistent with due process:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968); *see, e.g.*, *SFS Check, LLC v. First Bank of Del.*, 774 F.3d 351, 356 (6th Cir. 2014) (applying *Mohasco* test).

"Purposeful availment happens when the defendant personally takes actions that create a 'substantial connection' with the forum state such that he can 'reasonably anticipate being haled into court there.'" *SFS Check*, 774 F.3d at 356 (citing *Neogen Corp.*, 282 F.3d at 889). "This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous' or 'attenuated' contacts." *LAK, Inc. v. Deer Creek Enters.*, 885 F.2d 1293, 1300 (6th Cir. 1989) (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 475 (1985)). "There is a difference between . . . a mere 'collateral relation to the forum

14

State,' . . . and the kind of substantial relationship with the forum state that invokes, by design, 'the benefits and protections of its laws.'" *Id.* (quoting *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 293 (1980); *Hanson v. Denckla,* 357 U.S. 235, 251 (1958)). "The Supreme Court has emphasized, with respect to interstate contractual obligations, that 'parties who "reach out beyond one state and create continuing relationships and obligations with citizens of another state" are subject to regulation and sanctions in the other State for the consequences of their activities.'" *Id.* (quoting *Burger King*, 471 U.S. at 473).

In *LAK, Inc. v. Deer Creek Enterprises*, a Michigan corporation and an Indiana partnership entered into a contract for the sale of a piece of land in Florida. *Id.* at 1293. The Michigan corporation filed suit in Michigan, alleging that the Indiana corporation had breached the contract. *Id.* at 1297. The Sixth Circuit held that a Michigan district court lacked personal jurisdiction over the Indiana partnership. *Id.* at 1301–02. The Indiana partnership's only contact with Michigan was the sales contract it entered into with a Michigan corporation and related communications with that corporation. *Id.* The Sixth Circuit concluded that the Indiana partnership "did not 'reach out' to Michigan for the purpose of creating 'continuing relationships and obligations' with any citizen of that state," and explained that "[m]ere awareness that [the Michigan corporation] and its legal counsel were from Michigan clearly was not enough." *Id.* (citing *Asahi Metal Indus. Co., Ltd. v. Superior Court of Calif., Solano Cty.*, 480 U.S. 102, 105 (1987)).

V-Soft alleges that Logic has the following ties to Kentucky: (1) the agreement referenced V-Soft's location in Kentucky; (2) the employee assigned to Bloomberg was in the United States on a visa and the employee's immigration issues were handled in Louisville; (3) Logic had "significant oral and written communications" with V-Soft employees in Louisville;

15

and (4) the payments were to go to V-Soft's headquarters in Louisville.  (*Id.*, PageID # 54–55)  However, these contacts are not sufficient to show that Logic "purposefully availed" itself of the privilege of acting in Kentucky.  *See Lak*, 885 F.2d at 1300–02.  Rather, these ties are "precisely the sort of 'random,' 'fortuitous,' and 'attenuated' contacts that the *Burger King* Court rejected as a basis for haling non-resident defendants into foreign jurisdictions."  *Id.* at 1301.  These ties demonstrate nothing more than the fact that Logic was aware that V-Soft was located in Louisville, Kentucky, which the Sixth Circuit has held is insufficient to establish purposeful availment.  *See id.* at 1301–02.  As in *Lak*, the contract between the parties was Logic's only tie to the forum state and the contract was executed in a different state, which indicates that Logic "did not 'reach out' to [Kentucky] for the purpose of creating 'continuing relationships and obligations' with any citizen of that state."  *Id.* at 1300.

Because V-Soft has not satisfied the "purposeful availment" test, the Court need not consider the remaining prongs of the *Mohasco* test because each prong "represents an independent requirement, and failure to meet any one of the three means that personal jurisdiction may not be invoked."  *Id.* at 1303.  Nevertheless, the Court will briefly consider the remaining prongs.  *See id.*

In *Lak*, the Sixth Circuit was "not persuaded that [the Michigan corporation] ha[d] shown that its cause of action 'arose out of' the defendant's activities in Michigan."  *Id.*  The Sixth Circuit explained that "[w]here the defendant's contacts with the forum state are as attenuated as they are here, . . . we think it is incumbent on the plaintiff to show affirmatively that the fraudulent misrepresentations were actually made in the forum state."  *Id.* (citing *Serras v. First Tenn. Bank N.A.*, 875 F.2d 1212 (6th Cir. 1989)).

16

Logic's contacts with Kentucky are similarly attenuated.  As in *Lak*, Logic's only contacts with Kentucky are its contract with a business headquartered in Kentucky and several communications with that business.  *See id*. at 1300–02.  V-Soft does not allege that the contract was negotiated, entered into, or executed in Louisville, Kentucky.  Thus, the Court finds that the cause of action does not arise out of Logic's activities in Kentucky.

Finally, the Court concludes that it would not be reasonable to exercise jurisdiction over Logic.  "If the question is whether an individual's contract with an out-of-state party *alone* can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot."  *Lak*, 885 F.2d at 1305 (quoting *Burger King*, 471 U.S. at 478).  For example, in *Pickens v. Hess*, the Sixth Circuit "affirmed a district court finding that it would not be reasonable for a Tennessee court to exercise jurisdiction in a dispute arising out of a contract for the construction of a house in Arkansas, notwithstanding that the plaintiff builder was from Tennessee and notwithstanding that the defendant's architect was also from Tennessee and had dealt directly with the plaintiff builder in that state with regard to the contract."  *Id*. at 1304 (citing 573 F.2d 380 (6th Cir. 1978)).  Similarly, in *Lak*, the Sixth Circuit explained that the fact "that a Michigan plaintiff "happen[ed] to be involved in the transaction is hardly enough" to make it reasonable for a Michigan court to exercise personal jurisdiction over the Indiana partnership.  *Id*. at 1305.

As in *Pickens* and *Lak*, Logic entered into a contract with a corporation in the forum state and had related communications with that corporation.  *See id*. (citing *Pickens*, 573 F.2d at 380).  However, such contact with Kentucky is not sufficient to make it reasonable for the Court to exercise jurisdiction over Logic.  *See id*. at 1304–05.  V-Soft has not shown that Logic had a substantial connection with Kentucky that would make the exercise of jurisdiction reasonable.

17

Accordingly, V-Soft has not demonstrated that exercise of personal jurisdiction is consistent with Kentucky's long-arm statute and federal due process rights.  *See Caesars*, 336 S.W.3d at 57.

## III.    CONCLUSION

For the reasons explained above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** that the defendant's motion to dismiss for lack of personal jurisdiction (D.N. 4) is **GRANTED**.  This action is **DISMISSED** without prejudice and **STRICKEN** from the Court's docket.

March 31, 2017

David J. Hale, Judge
United States District Court

18